UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES DUCKETT,

                Plaintiff,

-v-

HADLEY ENGELHARD, ESQ., ENTER
SPORTS MANAGEMENT, WES BRIDGES,
ESQ., BECKER LLC, and BECKER MEISEL,
LLC,

                Defendants.

No. 15-cv-8645 (RJS)
OPINION AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/6/17

RICHARD J. SULLIVAN, District Judge:

    Plaintiff James Duckett brings this action against Defendants Hadley Engelhard, Esq., Enter Sports Management, Wes Bridges, Esq., Becker LLC, and Becker Meisel, LLC, asserting claims for breach of contract, unjust enrichment, and declaratory judgment arising out of an alleged finder's fee agreement involving Defendants' representation of a professional football player. Now before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is granted.

## I. BACKGROUND

### A. Facts[1]

    This action arises out of an alleged agreement between Plaintiff and Defendants pursuant to which Defendants agreed to compensate Plaintiff for services he rendered in connection with

---

[1] The following facts are taken from the amended complaint (Doc. No. 35 ("Compl.")) and from a document on which Plaintiff bases his breach of contract claim, which is referenced and quoted from extensively in the amended complaint (*see* Compl. ¶ 19). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on motion to

the recruitment of wide receiver Mike Williams to sign a National Football League ("NFL") representation contract with Defendants. In the fall of 2009, Plaintiff organized and hosted meetings between Williams and agents seeking to recruit Williams for representation, including a meeting with Defendants. (Compl. ¶¶ 11–12.) During the meeting with Defendants, the parties discussed terms for Plaintiff's fee for facilitating and recruiting Williams to accept Defendants' offer of representation. (*Id.* ¶ 13.) According to Plaintiff, the parties agreed that Plaintiff would be paid "33% of all eventual fees received by Defendants, including all player contracts and endorsement contracts, to be paid at the time of such payment to Defendants." (*Id.* ¶ 14.)

On or about November 15, 2009, Plaintiff met again with Defendants and Williams to "formalize" their agreements. (*Id.* ¶ 15.) That day, Defendants Engelhard and Bridges entered into an NFL Players Association Standard Representation Agreement ("SRA") with Williams, whereby Defendants would advise Williams with regard to the procurement of an NFL contract. (*Id.* ¶ 16.) Pursuant to the SRA, Engelhard and Bridges were to receive 3% of Williams's earnings "as or related to his services as a professional football player." (*Id.*)

Attached to the SRA was an "SRA Disclosure Form for Recruiting Assistance Payment" ("SRA Disclosure Form"), dated November 15, 2009 and signed by Engelhard and Bridges, which states as follows:

> I, Hadley Engelhard / Wes Bridges (Contract Advisor), hereby disclose to Mike Williams (Player) that I or my agents have paid or promised to pay, directly or indirectly, the money or any other thing of value so indicated below . . . to the person(s) or entities listed

---

dismiss, courts may consider "statements or documents incorporated into the complaint by reference"). In resolving the instant motion, the Court has also considered the arguments raised in Defendant's memorandum of law (Doc. No. 52 ("Mem.")), Plaintiff's opposition (Doc. No. 55 ("Opp'n")), Defendant's reply (Doc. No. 57 ("Reply")), and the supporting documents submitted therewith.

below in return for recruiting or helping to recruit Player to sign a
Standard Representation Agreement (SRA)[.]

(Doc. No. 49-5, Geraghty Decl. Ex. E; *see also* Compl. ¶¶ 17–19 (describing the SRA Disclosure Form).) Plaintiff's name, address, and phone number are listed below on the form, along with – under "Money or Other Thing of Value" – "33% of net proceeds of player contracts." (Doc. No. 49-5, Geraghty Decl. Ex. E.) Engelhard and Bridges signed the document after the following certification: "I hereby certify that the above information is true and complete." (*Id.*)

On or about June 4, 2010, while represented by Defendants, Williams signed a three-year NFL contract with the Tampa Bay Buccaneers for an amount exceeding $2,000,000. (Compl. ¶ 21.) On or about July 24, 2013, while represented by Engelhard, Williams signed a $39,000,000 contract with the Buccaneers. (*Id.* ¶ 22.) Plaintiff alleges that Williams has been paid $15,000,000 pursuant to these contracts as of the date of the complaint, and that Williams "has paid, or owes, Defendants 3% of his earnings as a professional football player, and endorsements related thereto, and Defendants owe Plaintiff 33% thereof." (*Id.* ¶ 24.) However, Defendants have made no payments to Plaintiff. (*Id.* ¶ 25.)

B. Procedural History

Plaintiff commenced this action by filing a complaint on November 13, 2015. (Doc. No. 1.)[2] Following a conference on an anticipated motion to dismiss by Defendants, Plaintiff filed an amended complaint on June 3, 2016, asserting claims for breach of an oral agreement and unjust enrichment and seeking a declaratory judgment declaring that he is entitled to 33% of all future

---

[2] In a related action initiated in 2014, Plaintiff brought breach of contract and other claims against Williams, arising out of the same set of facts, in which Plaintiff sought 33% (roughly $5 million) of Williams's earnings under the 2010 and 2013 contracts. *See Duckett v. Williams*, No. 14-cv-3065 (RJS) (Apr. 29, 2014). On February 6, 2015, the Court dismissed that action in its entirety, finding, among other things, that the SRA Disclosure Form provided Plaintiff with absolutely no basis to sue Williams. *See Duckett v. Williams*, 86 F. Supp. 3d 268, 276 (S.D.N.Y. 2015).

payments to the Defendants with respect to their representation of Williams. (Doc. No. 35.) Defendants Engelhard and Enter Sports Management filed a motion to dismiss on June 21, 2016 (Doc. No. 42), and Defendants Bridges and Becker LLC joined in that motion (Doc. No. 43). The motion was fully briefed as of October 5, 2016 (Doc. No. 57), and Plaintiff filed a letter listing two additional case citations on October 7, 2016 (Doc. No. 58).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns*, 493 F.3d at 98; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

III. DISCUSSION

A. Breach of Contract and Declaratory Judgment

Defendants argue that Plaintiff's claim for "33% of all eventual fees received by Defendants" from their representation of Williams relies on an oral agreement that is barred by New York's statute of frauds.[3] Specifically, Defendants contend that the oral agreement is unenforceable pursuant to N.Y. Gen. Oblig. Law § 5-701(a)(10) because it is an agreement for a "finder's fee." (Mem. at 6–9.) Plaintiff does not dispute that the agreement at issue was oral and within the ambit of Section 5-701(a)(10) (*see* Opp'n at 1), which bars oral agreements "to pay compensation for services rendered" in connection with, among other things, the "negotiation" of a "business opportunity," N.Y. Gen. Oblig. Law § 5-701(a)(10); *see also Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 789 (2d Cir. 1986) ("There is no doubt that § 5-701(a)(10) bars oral finder's-fee contracts."). Nevertheless, Plaintiff argues that the alleged oral contract is valid because (1) he performed under the agreement (Opp'n at 8–9), and alternatively (2) the SRA Disclosure Form constitutes a "note or memorandum" of the agreement that satisfies Section 5-701(a)'s writing requirement (*id.* at 15–19).[4]

Plaintiff's first argument is easily disposed of. "Although New York law provides that certain oral agreements may be removed from the statute of frauds by the equitable doctrine of

---

[3] Both parties' briefs "assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). Accordingly, the Court applies New York law.

[4] Defendants also argue that the alleged oral agreement is unenforceable pursuant to Section 5-701(a)(1) because full performance of the agreement is not possible within one year. *See* N.Y. Gen. Oblig. Law § 5-701(a)(1) (covering agreements that "[b]y [their] terms [are] not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime"). Although the parties hotly dispute whether the statute applies on this ground, the Court does not reach the issue since the parties do not dispute that Section 5-701(a)(10) covers the alleged oral finder's fee agreement, and the Court's resolution of that issue is dispositive as to Plaintiff's contract and declaratory judgment claims.

partial performance, the New York Court of Appeals has 'firmly stated' that there is no part performance exception to § 5-701(a)(10) of New York's statute of frauds." *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 613 n.3 (S.D.N.Y. 2010) (collecting cases); *see also Transition Investments, Inc. v. The Allen O. Dragge, Jr. Family Trust*, No. 11-cv-4775 (AJN), 2012 WL 1848875, at *9 n.11 (S.D.N.Y. May 21, 2012) (same); *Castellotti v. Free*, 138 A.D.3d 198, 203 (1st Dep't 2016) ("the partial performance exception applies only to the statute of frauds provision in [N.Y. Gen. Obl. L.] § 5-703, and has not been extended to § 5-701"). Thus, Plaintiff's alleged performance under the agreement does not exempt the agreement from Section 5-701.

The Court also finds that the SRA Disclosure Form does not constitute a sufficient writing under Section 5-701(a). That provision requires an oral agreement covered by the statute to be evidenced by a written "note or memorandum" that is "subscribed by the party to be charged." N.Y. Gen. Obl. L. § 5-701(a). For a writing to satisfy this requirement, it "must 'completely evidence the contract which the parties made.'" *Zaitsev v. Salomon Bros.*, 60 F.3d 1001, 1004 (2d Cir. 1995) (quoting *Poel v. Brunswick-Balke-Collender Co.*, 216 N.Y. 310, 314 (1915)). Put differently, the writing "must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement." *In re Licata*, 76 A.D.3d 1076, 1077 (2d Dep't 2010) (citing cases). Moreover, "[a] writing is not a sufficient memorandum unless the 'full intention of the parties can be ascertained from it alone, without recourse to parol evidence.'" *Dahan v. Weiss*, 120 A.D.3d 540, 542 (2d Dep't 2014) (quoting *Cooley v. Lobdell*, 153 N.Y. 596, 600 (1897)); *see also Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 118 (1989) ("Consideration of parol evidence in assessing the adequacy of a writing for [s]tatute of [f]rauds purposes would otherwise undermine the very reason for a [s]tatute of [f]rauds in the first instance. That issue must be determined from the documents themselves, as a matter of law[.]"). Thus,

where the "material terms" of a contract subject to the statute of frauds "are not reasonably definite" on the face of the writing, "the contract is unenforceable." *Licata*, 76 A.D.3d at 1077 (citing *Joseph Martin, Jr., Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981)).[5]

Here, the SRA Disclosure Form contains a number of ambiguities regarding the material terms of the alleged contract that would require extrinsic evidence to resolve. To begin with, the document could be read to indicate that Plaintiff has already been compensated, as it states that Engelhard and Bridges "*have paid* or promised to pay" Plaintiff. (Compl. ¶ 19 (emphasis added).) If the former is true – i.e., if the document merely refers to a historical fact – the document would not evidence a valid contract. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427–28 (2d Cir. 2004) ("'Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance.'" (quoting *Restatement (Second) of Contracts* § 18 (1981))).

Moreover, the nature of the compensation stated in the SRA Disclosure Form – "33% of net proceeds of player contracts" (Compl. ¶ 19) – is ambiguous on its face. "A finder's fee . . . is a material term that must be specified to create a binding contract." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 125 (S.D.N.Y. 2010) (citing *Hutner v. Greene*, 734 F.2d 896, 900 (2d Cir. 1984), among other cases). "[A]bsent a 'meeting of the minds' on this term, a contract is unenforceable." *Vioni v. Am. Capital Strategies Ltd.*, No. 08-cv-2950 (PAC), 2009 WL 174937, at *3 (S.D.N.Y. Jan. 23, 2009) (citing cases). Here, it is unclear what "player contracts" means. Plaintiff alleges that it includes "all player contracts and endorsement contracts"

---

[5] Although it is "well established that the statutorily required writing need not be contained in one single document, but rather may be furnished by 'piecing together other, related writings,'" *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470, 477 (2013) (citation omitted), the only such writing identified by Plaintiff here is the SRA Disclosure Form.

(Compl. ¶ 14), but the latter type of contract is not referenced in the document. Nor is it clear whether "player contracts" would include only NFL contracts or would also include contracts with other professional football leagues, such as the Canadian Football League or the Arena Football League. The document's reference to "*net proceeds* of player contracts" (Compl. ¶ 19 (emphasis added)) compounds this ambiguity. Does "net proceeds" mean Engelhard's and Bridges' share of Williams's earnings or their proceeds net of their costs? The document's statement that Engelhard and Bridges "have paid or promised to pay" Plaintiff "*directly or indirectly*" (*id.* (emphasis added)) only further clouds the nature of the alleged payment obligation.

While the Court could hazard a guess as to the parties' intent with respect to the ambiguous terms identified above, the terms are by no means "reasonably definite," *Licata*, 76 A.D.3d at 1077, and parol evidence would unquestionably be required to ascertain the parties' "full intention" and "the essential terms of [their] complete agreement," *Dahan*, 120 A.D.3d at 541–42, if they even had one. Accordingly, the Court finds that the SRA Disclosure Form does not constitute a writing sufficient to meet the requirements of Section 5-701(a). Thus, the alleged contract does not satisfy New York's statute of frauds, and Plaintiff's breach of contract claim must be dismissed. Moreover, because Plaintiff's claim for a declaratory judgment relies entirely on the existence of that contract (*see* Compl. ¶ 41), that claim must also be dismissed.

B. Unjust Enrichment

Plaintiff pleads in the alternative that he is entitled to recover from Defendants under an unjust enrichment theory; this claim also fails. "It is well settled that under New York law a plaintiff may not escape the [s]tatute of [f]rauds by attaching the label 'quantum meruit' or 'unjust enrichment' or 'promissory estoppel' to the underlying contract claim." *Morgenweck v. Vision Capital Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir. 2011) (citing *Grappo v. Alitalia Linee*

*Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir. 1995), among other cases); *see also Snyder v. Bronfman*, 13 N.Y.3d 504, 506 (2009) ("[Q]uantum meruit and unjust enrichment claims brought to recover the value of plaintiff's services in helping to achieve a [business opportunity] are barred by the statute of frauds contained in General Obligations Law § 5-701(a)(10)."). Here, Plaintiff all but concedes that there is no factual distinction between Plaintiff's breach of contract claim and his unjust enrichment claim. (*See* Compl. ¶ 37 ("Defendants should be required to pay Plaintiff the agreed-upon value of the services he provided to Defendants, in the amount of 33% of their net proceeds from their representation of Williams.").) Accordingly, because Plaintiff's unjust enrichment claim is simply a breach of contract claim under another name, it is also barred by the statute of frauds.[6]

\*   \*   \*

The statute of frauds "is designed to protect the parties and preserve the integrity of contractual agreements." *JF Capital Advisors, LLC v. Lightstone Grp., LLC*, 25 N.Y.3d 759, 764 (2015). "More precisely," the statute "guard[s] against the peril of perjury," "prevent[s] the enforcement of unfounded fraudulent claims," and "decrease[s] uncertainties" and the litigation that inevitably flows therefrom. *Id.* at 764–65. Regardless of whether the doctrine accomplishes these goals in all cases, its message is clear: the contracts it covers must be in writing, and contracting parties who disregard that requirement do so at their own risk. Here, Plaintiff alleges

---

[6] For the same reason, Plaintiff's argument – made for the first time in his brief – that he is entitled to compensation under "implied contract" or "quantum meruit" theories (*see* Opp'n at 18–19) also fails. In addition, the amended complaint contains no allegations that remotely suggest that the parties entered into a "binding preliminary commitment" as opposed to a complete contract, despite Plaintiff's contention to the contrary in his brief. (*See* Opp'n at 19–23.) Accordingly, all three of these alternative theories – implied contract, quantum meruit, and preliminary agreement – constitute improper efforts to amend Plaintiff's pleading via his brief, which provides an additional ground for rejecting them. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[a] party may not amend [his] pleading through statements in briefs").

a finder's fee contract worth more than $150,000 that was supposedly executed orally on the same day Defendants were executing – in writing – the very agreement Plaintiff supposedly brokered. By failing to memorialize his own agreement in writing, Plaintiff assumed the risk that the statute of frauds would later preclude his recovery, as it now does.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is granted. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 48 and to close this case.

SO ORDERED.

Dated:     February 6, 2017
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE